**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| OLA JOLINE BOSSARD, Plaintiff, vs. CAROLYN W. COLVIN, Acting Commissioner of Social Security, Defendant. | Case No. 2:13-CV-03094-VEB DECISION AND ORDER |
| --- | --- |

## I. INTRODUCTION

In December of 2009, Plaintiff Ola Joline Bossard applied for Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner of Social Security denied the application.

Plaintiff, represented by Bothwell & Hamill, P.C., Thomas Bothwell, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On May 1, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The procedural history may be summarized as follows:

On December 30, 2009, Plaintiff applied for SSI benefits, alleging disability beginning July 1, 2008. (T at 106-109).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On October 27, 2011, a hearing was held before ALJ James W. Sherry. (T at 32). Plaintiff appeared with her attorney and testified. (T at 37-41, 43-57). The ALJ also received testimony from Donna Lapoint, a vocational expert (T at 41-42, 57-64).

On December 21, 2011, ALJ Sherry issued a written decision denying the application for benefits and finding that Plaintiff was not disabled within the

[1] Citations to ("T") refer to the administrative record at Docket No. 12.

meaning of the Social Security Act. (T at 8-24). The ALJ's decision became the Commissioner's final decision on July 15, 2013, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-6).

On September 12, 2013, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on November 19, 2013. (Docket No. 11).

Plaintiff filed a motion for summary judgment on March 17, 2014. (Docket No. 15). The Commissioner moved for summary judgment on April 28, 2014. (Docket No. 17). Plaintiff filed a reply brief on June 2, 2014. (Docket No. 21).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

## III. DISCUSSION

### A. Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20

C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman*

*v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**C. Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 30, 2009. (T at 13). The ALJ determined that Plaintiff's migraine headaches, diabetes mellitus, single episode posterior cerebral vascular accident, hypertension, syncopal episodes, obesity, and sleep apnea were impairments considered "severe" under the Act. (Tr. 13-14).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 14-15). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR § 416.967 (b), except that she could never climb ladders/ropes/scaffolds and only occasionally climb ramps or stairs. (T at 15-18). The ALJ concluded that Plaintiff needed to avoid concentrated exposure to poorly ventilated areas, wetness or humidity, irritants such as fumes, odors, dust, chemicals, and gases, unprotected heights, and the use of moving machinery. (T at 15-18).

The ALJ concluded that Plaintiff could perform her past relevant work as a chemical dependency attendant. (T at 18). In the alternative, considering Plaintiff's age (36 on the application date), education (limited), work experience, and RFC (light work, with non-exertional limitations outlined above), the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 18-19).

As such, the ALJ concluded that Plaintiff was not disabled, as defined under the Act, between December 30, 2009 (the application date) and December 21, 2011 (the date of the ALJ's decision) and was therefore not entitled to benefits. (Tr. 19-

20). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D. Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) main arguments. First, Plaintiff asserts that the ALJ did not properly assess the opinion of her treating physician. Second, she argues that the ALJ's step four analysis was flawed. Third, Plaintiff challenges the ALJ's alternative step five analysis. This Court will address each argument in turn.

## IV. ANALYSIS

**A. Treating Physician's Opinion**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d

1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, and/or the absence of regular medical treatment during the alleged period of disability, and/or the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs*., 44 F.3d 1453, 1463-64 (9th Cir. 1995).

In October of 2011, Patrick Waber, Plaintiff's treating physician, completed a medical questionnaire. Dr. Waber opined that Plaintiff could not perform any type of work on a reasonably continuous, sustained basis. (T at 697). He assessed severe limitations with regard to Plaintiff's understanding and memory, ability to sustain concentration and persistence, social interaction, and adaptation. (T at 698-700).

The ALJ assigned no weight to Dr. Weber's opinion, noting that it was unsupported by objective medical findings and finding it inconsistent with the medical record as a whole. (T at 17). In contrast, the ALJ afforded weight to the assessment of Dr. Norman Staley, a non-examining State Agency review consultant. Dr. Staley opined that Plaintiff could perform work activities consistent with light work, with some limitation in her ability to climb ramps and stairs and a need to avoid concentrated exposure to wetness, fumes, and hazards. (T at 17, 399-401). The ALJ also noted the April 2010 report of Dr. Jay Toews, a psychiatric

consultative examiner, who found it "highly probable" that Plaintiff was malingering. (T at 16-17, 416). The ALJ also found that Plaintiff's activities of daily living contradicted Dr. Waber's assessment. (T at 16-17). In particular, Plaintiff attended to personal care needs, performed light household chores, and cared for her three daughters. (T at 16). Lastly, the ALJ faulted Plaintiff for failing to follow recommended treatment (i.e. taking her medication and failing to stop smoking). (T at 17).

For the following reasons, this Court finds that the ALJ's decision cannot be sustained. There is no question that "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin*., 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f); *see also Sims v. Apfel*, 530 U.S. 103, 110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . .").

This duty includes an obligation to re-contact a treating physician when the basis for his or her opinion in unclear. *See* SSR 96-5p ("[I]f the evidence does not support a treating source's opinion . . . and the [ALJ] cannot ascertain the basis of the opinion from the case record, the [ALJ] must make every reasonable effort to re-contact the source for clarification of the reasons for the opinion."). While a treating

physician's opinion may be rejected if it is inadequately supported, the physician should be re-contacted where, as here, the evidence of disability is ambiguous. *See Estrada v. Astrue*, No EDCV 07-01226, 2009 U.S. Dist. LEXIS 15824, at *11 (C.D. Cal. Feb. 25, 2009).

The Commissioner cites Dr. Staley's opinion as evidence supporting the ALJ's decision to discount Dr. Waber's assessment. However, Dr. Staley rendered his opinion in March of 2010 and thus did not have the opportunity to review Dr. Waber's October 2011 report. In addition, Dr. Staley conducted a physical assessment and thus did not assess Plaintiff's mental health limitations. Further, the opinion of a non-examining State Agency physician does not, without more, justify the rejection of an examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

In addition, Dr. Toews's opinion that Plaintiff was malingering was rendered in April 2010. As such, the consultative examiner did not have the opportunity to consider that Dr. Waber found Plaintiff's complaints credible.

The medical record did contain some evidence contradicting Plaintiff's complaints (and Dr. Waber's findings). For example, Dr. Toews concluded that Plaintiff was probably malingering and, in particular, believed she was exaggerating

her symptoms. (T at 416). A March 2009 EEG was normal with "no seizure transients." (T at 188).

However, the record also contained several pieces of evidence consistent with Plaintiff's claims and Dr. Waber's assessment. Brain imaging in August of 2009 showed abnormalities. (T at 382). The examiner opined that the possibility of demyelinating disease (a condition that results in damage to the protective covering that surrounds nerve fibers in the brain) should be considered. (T at 382). Dr. Peter Gilmore, Plaintiff's treating neurologist, referenced an MRI that showed two brain lesions. (T at 260). Dr. Mark Deramo, a family physician, diagnosed anxiety. (T at 569). A mental health counselor diagnosed major depressive disorder and generalized anxiety disorder and assigned a Assigned a Global Assessment of Functioning ("GAF") score[2] of 45 (T at 689), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).

In addition, the ALJ's reliance on Plaintiff's activities of daily living, which were rather modest, to discount Dr. Waber's assessment was questionable. Plaintiff attends to basic self-care, engages in crafts as a hobby, and enjoys time with friends.

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

(T at 414). However, she does not drive and needs to be accompanied while shopping due to fatigue. (T at 414). Moreover, one of the primary complaints is seizures and related syncope events (loss of consciousness). These periodic occurrences (along with the requisite follow-up medical treatment) would likely not prevent a person from performing activities of daily living according to a flexible, self-determined schedule, but could certainly preclude a person from satisfying the demands of competitive, remunerative employment. Indeed, individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be

by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(citations omitted).

Lastly, the ALJ's decision to fault Plaintiff for failing to follow treatment recommendations was likewise suspect. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

Accordingly, the ALJ's decision to afford no weight to Dr. Waber's opinion cannot be sustained.

**B. Step Four and Five Analysis**

At step four of the sequential evaluation, the ALJ concluded that Plaintiff could perform her past relevant work as a chemical dependency attendant. (T at 18). In the alternative, at step five, considering Plaintiff's age (36 on the application date), education (limited), work experience, and RFC (light work, with non-exertional limitations outlined above), the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 18-19).

Plaintiff challenges the ALJ's findings at steps four and five. Plaintiff essentially incorporates her treating physician argument, contending that the ALJ's findings were flawed because they did not include the limitations identified by Dr. Waber. Accordingly, upon remand the ALJ will need to revisit the step four and step five findings after further development of the record with regard to Dr. Waber.

**C. Remand for Further Proceedings**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the record must be further developed. In particular, Dr. Waber should be re-contacted and asked to explain the basis for his assessment. As outlined above, it is not clear from the record that Plaintiff is disabled. There is contradictory evidence. An explanation from Dr. Waber providing the basis of his opinion will provide material assistance with regard to resolving the conflicting evidence.

## V. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 15**, is **GRANTED.**

The Commissioner's motion for summary judgment, **Docket No. 17**, is **DENIED**.

This case is **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Plaintiff, and keep the case open for a period of sixty (60) days to allow Plaintiff's counsel an opportunity to submit an application for attorneys' fees.

DATED this 2nd day of September, 2014.

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE